IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 CASE |
| | ) | No. 24-20217 |
| WALTER ERNEST MAI AND ANGELA | ) | |
| MARIE MAI, | ) | |
| | ) | |
|     Debtors. | ) | |
| _____ | ) | |
| PAUL A. SCHOFIELD, AS CHAPTER 7 | ) | ADVERSARY |
| TRUSTEE OF THE ESTATE OF | ) | PROCEEDING |
| WALTER ERNEST MAI AND | ) | No. 24-02004 |
| ANGELA MARIE MAI, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE BRIAN A. MOORE LAW FIRM, | ) | |
| LLC, | ) | |
| | ) | |
|     Defendant. | ) | |

## <u>OPINION AND ORDER DENYING MOTION TO DISMISS</u>

Pursuant to notice, the Motion to Dismiss (A.P. ECF No. 13)[1] (the "<u>Motion</u>") filed

by Defendant The Brian A. Moore Law Firm, LLC ("<u>Defendant</u>") came on for hearing

before the Court. Defendant moves to dismiss the Complaint for failure to state a claim

---

[1] Docket citations beginning with "A.P." refer to the docket in the present adversary proceeding, No. 24-02004. All other citations to the docket refer to the docket in the underlying chapter 7 bankruptcy case, No. 24-20217.

under Federal Rule of Civil Procedure (hereinafter the "Rule" or "Rules") 12(b)(6).[2] Plaintiff Paul A. Schofield, as Chapter 7 Trustee of the Estate of Walter Ernest Mai and Angela Marie Mai ("Plaintiff") filed a Response to the Motion (A.P. ECF No. 18) (the "Response"). Thereafter Defendant filed a Reply in support of its Motion (A.P. ECF No. 26) (the "Reply"). The matter has been fully briefed and heard. For the reasons set forth below, the Motion will be denied.

**BACKGROUND**

**A.  The Complaint**

Debtors Walter Ernest Mai and Angela Marie Mai ("Debtors") filed their chapter 7 petition on June 21, 2024. (See ECF No. 1.) Plaintiff filed the Complaint (A.P. ECF No. 1) (the "Complaint") initiating this adversary proceeding on November 25, 2024. The activities described in the Complaint occurred within a roughly one-year period prior to Debtors' bankruptcy filing.

Plaintiff pleaded the following facts in his Complaint:

On or about June 27, 2023, Debtors contracted with Defendant under a "Client Retainer Agreement" (the "Agreement") for a "Debt Resolution Program." (Id. at ¶ 8.) Under the Agreement, Defendant would receive funds from Debtors and Defendant

---

[2] Rule 12(b) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rule" or "Bankruptcy Rules") 7012(b).

would then disburse such funds to Debtors' creditors on an "adjusted, reduced, and/or compromised basis." (Id.) Debtors listed 20 creditors with claims totaling $59,176.00 to be covered under the Agreement. (Id. at ¶ 12.)

The Agreement also provided that Defendant would retain a portion of the funds paid to it as fees. (Id. at 8.) Debtors would pay Defendant an initial "retainer fee" of $995.00; monthly "legal administration" fees of $99.00; and a "service cost" equal to 21% of the debts to be paid. (Id. at ¶ 11.)

From July 7, 2023, to May 8, 2024, Debtors paid Defendant $8,367.06. (Id. at ¶ 13.) From those funds, Defendant made three disbursements, totaling $340.15, to one of Debtors' creditors. (Id. at ¶ 14.) Defendant kept $4,755.85 in fees—56.4% of the total amount Debtors paid, prior to the refunds described below. (Id. at ¶ 15.)

From May 15, 2024, to June 4, 2024, Defendant refunded $3,103.66 to Debtors. (Id. at ¶ 16.) After refunds, Defendant's fees accounted for 90.4% of the amount paid by Debtors—$4,755.85 in fees from $5,263.40 total paid. (Id. at ¶¶ 13, 16-17.) Plaintiff attached to the Complaint an account activity statement showing a record of transactions with Defendant from July 7, 2023, to June 4, 2024. (Id. at 11-12.)

Plaintiff has asserted several counts arising from these activities, which the Court discusses more thoroughly in its Findings of Fact and Conclusions of Law. First, as Count I, Plaintiff asserts that he is entitled to avoid the payments to Defendant as fraudulent

transfers under 11 U.S.C. § 548(a)(1)(B) because (i) the payments were a transfer of an interest of Debtors to Defendant; (ii) the payments to Defendant were made within two years of the bankruptcy petition date; (iii) Debtors did not receive reasonable equivalent value for their payments to Defendant; (iv) Debtors were either insolvent when they made the payments, or the payments caused them to become insolvent; and (v) there was no reasonable likelihood that Defendant would benefit Debtors and Debtors were in a worse financial condition post-Agreement. (Id. at ¶¶ 20-24.) In Count II, Plaintiff asserts he is entitled to avoid the payments to Defendant under O.C.G.A. § 18-2-75(a), made applicable to this proceeding by 11 U.S.C. § 544(b)(1), for the same reasons stated in Count I. (Id. at ¶¶ 28-34.) In Count III, Plaintiff asserts he is entitled to recover the value of Debtors' payments to Defendant under 11 U.S.C. § 550(a) because Defendant was the initial transferee of such payments. (Id. at ¶¶ 36-37.)

Counts IV and V arise under Georgia state law. In Count IV, Plaintiff asserts Defendant violated the Georgia Debt Adjustment Act (the "GDAA")[3] because it collected more than 7.5% in fees from the amount paid by Debtors for its debt adjustment services in violation of O.C.G.A. § 18-5-2 and routinely failed to make disbursements to creditors within 30 days of receipt of such funds in violation of O.C.G.A. § 18-5-3.2(a) and therefore

---

[3] Georgia's debt adjustment statutes are not designated collectively as an "Act." However, for ease of understanding and following the usage of Plaintiff, Defendant, and other Georgia courts, the Court will refer to the statutes of Title 18, Chapter 5 of the Georgia Code as the Georgia Debt Adjustment Act or the GDAA.

is liable for damages. (Id. at ¶¶ 41-49.) Plaintiff also specifically asserts that Defendant is not exempt from the GDAA for two reasons: "the debt adjusting provided by Defendant was not incurred in the practice of law in Georgia but was affirmatively offered by Defendant as a service" and Defendant offered no legal services to Debtors. (Id. at ¶ 40.) Count V is dependent on the success of Count IV. In Count V, Plaintiff asserts that Defendant violated the Georgia Fair Business Practices Act of 1975 (the "GFBPA") because violations of the GDAA are *per se* violations of the GFBPA and Defendant knew of its obligations under the GDAA and GFBPA and intentionally violated both laws and is liable for damages. (Id. at ¶¶ 51-56.) Plaintiff further alleges that because Debtor Walter Ernest Mai was 60 years old when he executed the Agreement and considered an "elder person" under O.C.G.A. § 10-1-850(2), Defendant violated the Georgia Unfair and Deceptive Practices Toward the Elderly Act ("GUDPTEA")[4] and is liable for an enhanced civil fine under O.C.G.A. § 10-1-851. (Id. at ¶ 57.) Plaintiff also seeks an award of punitive damages authorized under O.C.G.A. § 10-1-853 based on Mr. Mai's status as an elder person. (Id. at ¶¶ 58-61.)

---

[4] Georgia's statutes concerning unfair or deceptive practices toward the elderly are not designated collectively as an "Act." However, for ease of understanding and following the usage of other Georgia courts, the Court will refer to the statutes of Title 10, Chapter 1, Article 31 of the Georgia Code as the Georgia Unfair and Deceptive Practices Toward the Elderly Act or the GUDPTEA.

B.  **The Parties' Arguments**

Defendant argues that Counts I and II should be dismissed for failure to state a claim. Specifically, Defendant states that Plaintiff recites only "conclusory allegations" that Debtors did not receive reasonably equivalent value in exchange for their payments to Defendant, and no factual allegations to support these claims. (A.P. ECF No. 13 at 5-7.) Defendant argues that Count III is derivative of Counts I and II—so, because Counts I and II fail, so must Count III. (Id. at 7.)

Defendant then turns to Count IV. It argues Count IV should be dismissed because Defendant, as a law firm that provided legal services to Debtors, is exempt from the GDAA. (Id. at 8-11.) Similarly, Defendant argues Count V should be dismissed because the GFBPA does not apply to Defendant as a law firm that provided legal services to Debtors. (Id. at 11-12.) As an additional argument, Defendant contends that separation of powers principles prevent application of the GDAA and GFBPA to Defendant, a law firm, because the Georgia Supreme Court has the exclusive power to regulate the practice of law in Georgia. (Id. at 13.)

In support of its Motion, Defendant attached a declaration by Michelle Gallagher, a member manager of Defendant. (A.P. ECF No. 13-1.) Attached to Ms. Gallagher's declaration are two copies of the Agreement—one signed by Debtors on June 27, 2023, and one signed electronically by Atiya Vereen on July 3, 2023. (A.P. ECF No. 13-2; A.P. ECF

No. 13-3 at 42-43.) Ms. Vereen is identified as an attorney in the Agreement documents she signed. (A.P. ECF No. 13-3 at 42-43.) Defendant also attached to its Motion an undated print-out of Ms. Vereen's membership status in the State Bar of Georgia. (A.P. ECF No. 13-4.)

The Agreement is styled a "Client Retainer Agreement" between Debtors and Defendant d/b/a Guidestone Law Group. (A.P. ECF No. 13-2 at 2.) Without summarizing the entire Agreement, it "confirm[s]" that Debtors and Defendant "wish to form an Attorney/Client relationship." (Id.) It states Defendant will assist Debtors "with the resolution of burdensome debt, and as such, the Representation contemplated in this Agreement is referred to as a Debt Resolution Program." (Id.) It provides that Defendant's services are performed by "a group of professionals, including attorneys, paralegals, negotiators, assistants, and others. Attorneys directly supervise the activities they do not directly perform." (Id. at 4.) It states that Defendant will perform debt analysis, negotiate and resolve client debt, and perform litigation defense, subject to conditions and limitations. (Id. at 4-6.) It provides an extensive fee schedule of retainer fees, administration fees, and a "service cost" for "non-legal services." (Id. at 7-8.) These fees and costs are consistent with the allegations made in the Complaint.

Plaintiff responds with a statutory interpretation argument. He asserts that Defendant is not exempt from the GDAA because its services were not "incurred" in the

practice of law, as provided in the statute exempting from the GDAA "situations involving debt adjustment incurred in the practice of law" in Georgia, where Defendant did not provide legal services to Debtors. (A.P. ECF No. 18 at 7-11.) Plaintiff also asserts that Defendant is not exempt from the GDAA and GFBPA simply because it is a law firm. (Id. at 11, 13-14.) Finally, Plaintiff asserts that it has sufficiently pleaded lack of reasonably equivalent value by including the specific amounts Debtors paid to Defendant versus the $340.15 Defendant paid to Debtors' creditors. (Id. at 14.)

Defendant replies with a few final points. It asserts that Plaintiff has mischaracterized the Agreement, and that Defendant offered Debtors litigation defense, debt analysis, and debt resolution, which are all legal services. (A.P. ECF No. 26 at 2.) It also argues that non-attorneys on its staff can still provide legal services under the supervision of attorneys. (Id. at 2-3.) Defendant also disputes Plaintiff's characterization of the fees paid by Debtors and refunds issued to Debtors. (Id. at 3-4.) It additionally raises the history of the GDAA and the elimination of "incidentally" from the language of O.C.G.A. § 18-5-3 in opposition to Plaintiff's interpretation of the GDAA. (Id. at 4.) By eliminating the word "incidentally" from the exemption statute of the GDAA in 2003, Defendant argues, the Georgia legislature clarified that the exemption would apply to any debt adjustment incurred in the provision of legal services, incidental or not. (Id. at 4-5.)

AO 72A
(Rev. 8/82)

At the hearing on the Motion, the parties largely echoed the arguments presented in their briefs, although the Court notes that Defendant, significantly, argued that it is not only exempt from the GDAA under O.C.G.A. § 18-5-3 because it is a law firm that provided legal services to Debtors, but also solely by virtue of being a law firm. After consideration of the Complaint, the Agreement, each of the arguments presented by the parties, and the relevant law, the Motion will be denied for the reasons stated below.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

**I.**  **Motion to Dismiss Standard**

Rule 8(a)(2)[5] requires that a plaintiff provide only "a short and plain statement of the claim showing that the pleader is entitled to relief," enough to give the defendant adequate notice of the claim "and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 672 (2009).

Under Rule 12(b)(6), a complaint may be dismissed if it fails "to state a claim upon which relief can be granted." A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This standard "does not impose a probability requirement at the

---

[5] Rule 8 is made applicable to adversary proceedings by Bankruptcy Rule 7008(a).

pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." Id. at 556.

All reasonable inferences must be drawn in favor of the plaintiff. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009); Anthony v. Concrete Supply Co., 241 F. Supp. 3d 1342, 1348 (N.D. Ga. 2017). However, conclusory allegations or legal conclusions presented as facts should not be accepted as true. Twombly, 550 U.S. at 555. Ultimately, the Court should read the complaint as a whole and reach conclusions based on its experience and common sense. See Iqbal, 556 U.S. at 679; Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1249 (11th Cir. 2005).

Finally, at this current motion to dismiss stage, the Court declines to convert the Motion to one for summary judgment but will consider only the Complaint and the two copies of the Agreement (one signed by Debtors and one electronically signed by Aniya Vereen, identified as an attorney in the Agreement she signed) attached to the Motion. See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (citation omitted) (holding that the "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed," i.e., the authenticity of the document is not challenged). The Agreement (the copies are the same, except Ms. Vereen's version has an electronic signature page and a contact information page for Ms. Vereen) is central to

Plaintiff's claims—it is the basis of Debtors' relationship with Defendant and sets forth fee details that form the basis of Plaintiff's claims—and is referenced throughout the Complaint. Furthermore, Plaintiff has not challenged the authenticity of the two copies of the Agreement attached to the Motion.

However, the Court declines to consider the undated print-out of Ms. Vereen's membership status in the State Bar of Georgia or any other evidence concerning facts outside of the Complaint or Agreement. Ms. Vereen's undated bar membership status may be a piece of relevant evidence at trial, but it is not so central to Plaintiff's claims, which are based on alleged facts arising between June 2023 and June 2024, as to be considered at the motion to dismiss stage. If evidence outside the four corners of the Complaint and the Agreement was considered, the Court would have to convert the Motion to a motion for summary judgment. Id.

**II.** **Plaintiff has sufficiently pleaded a claim for constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).**

To state a claim for constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B), a plaintiff must plead with particularity facts to show (1) the debtor had an interest in property; (2) the transfer of that interest occurred within [two] year[s] of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the debtor received less than reasonably equivalent value in

exchange for such transfer. Dionne v. Keating (In re XYZ Options, Inc.), 154 F.3d 1262, 1275 (11th Cir. 1998).

Defendant asserts that Counts I, II, and III (as derivative of Counts I and II) should be dismissed because Plaintiff has not sufficiently pleaded that Debtors did not receive less than reasonably equivalent value in exchange for their payments to Defendant. Defendant makes no arguments or assertions related to the other elements included in § 548(a)(1)(B). As such, the Court will limit its analysis to the reasonably equivalent value element only.

"'Reasonably equivalent value' does not mean dollar-for-dollar equivalence." Estate of Juanita Jackson v. Schron (In re Fundamental Long Term Care, Inc.), 873 F.3d 1325, 1344 (11th Cir. 2017); see also McHenry v. Dillworth (In re Caribbean Fuels America, Inc.), 688 F. App'x 890, 894-95 (11th Cir. 2017) ("[U]nder § 548, in assessing the value of property, goods, or services provided directly to a debtor, the question is not whether the debtor subjectively benefitted from the property it received; the operative question is whether the property, goods, or services provided had objective value.") (internal quotations omitted); VFB LLC v. Campbell Soup Co., 482 F.3d 624, 631 (3d Cir. 2007) ("[A] party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave.") (internal quotations omitted).

It is up to courts to make "informed judgments" about the value of received property, goods, or services based on the totality of the circumstances. Fundamental Long

Term Care, Inc., 873 F.3d at 1344. However, a plaintiff must present "more than a bald assertion" about the value of a received good or service to sufficiently plead that he received "less than reasonably equivalent value." Id.; see also Kerr v. Venetian Casino Resort (In re Medici), 524 B.R. 902, 907 (Bankr. N.D. Ga. 2014) (finding trustee sufficiently pleaded constructive fraudulent transfer claim where the trustee alleged relevant transfers "were used to gamble [which] could reasonably support an inference that the [t]rustee asserts that gambling does not provide reasonably equivalent value to the amount transferred").

In support of its assertion, the Defendant argues that the Complaint should be dismissed because "Trustee has pled nothing more than conclusions to support this [reasonably equivalent value] element" and does not include any factual allegations regarding the extend of the services Defendant provided to Debtors. The Court disagrees with Defendant.

Plaintiff has sufficiently pleaded facts alleging that Debtors did not receive reasonably equivalent value in exchange for their payments to Defendant. He has alleged that between July 7, 2023, and May 8, 2024, Debtors transferred $8,367.06 to Defendant under the Agreement between the parties in exchange for Defendant's services, and in that time, Defendant paid only $340.15 to Debtors' creditors. (A.P. ECF No. 1 at ¶¶ 8, 13-14, 20.) Plaintiff then connected the dots and specifically pleaded that because Debtors paid

$8,367.06 to Defendant, and, in return, Defendant paid only $340.15 to Debtors' creditors and settled none of Debtors' debts, Debtors did not receive reasonably equivalent value for their payments to Defendant. (Id. at ¶ 22.) This is enough to allege lack of reasonably equivalent value and clearly amounts to "more than a bare assertion." See Fundamental Long Term Care, 873 F.3d at 1344 (rejecting as insufficient the "bare assertion" that claims debtor entity assigned to defendant were worth in excess of $2 billion, where complaint "[did] not set out any facts tending to show that the claims were worth upwards of $1 billion, actually or in theory"). Plaintiff includes specific numbers and alleges that the debt payments—Defendant's service to Debtors—equal to $340.15 are not reasonably equivalent in value to the $8,367.06 paid by Debtors. Plaintiff also pleads that no debts were fully settled by Defendant, which is also a relevant allegation when considering reasonably equivalent value, as it is relevant to the value of the service(s) Defendant provided to Debtor. Even if the Court considers the amount paid by Debtors to Defendant even after Defendant issued refunds to Debtors—$4,755.85—the Court can reasonably infer that the debt payments equal to $340.15 are not reasonably equivalent in value to the $4,755.85 payment to Defendant. Accepting Plaintiff's well-pleaded allegations as true and making all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has stated a claim for constructive fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

### III.   **Plaintiff has sufficiently pleaded a claim for transfer avoidance under 11 U.S.C. § 544(b)(1) and O.C.G.A. § 18-2-75(a) in Count II.**

Under 11 U.S.C. § 544(b)(1), "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502 . . ." 11 U.S.C. § 544(b)(1). This "enables a trustee to do in a bankruptcy proceeding what a creditor could do outside of bankruptcy—except the trustee will recover the property for the benefit of the estate." Gordon v. Webster (In re Webster), 629 B.R. 654, 673-74 (Bankr. N.D. Ga. 2021) (internal quotations omitted). Accordingly, "to maintain an avoidance action under § 544(b), a trustee must demonstrate the existence of a so-called 'golden' or 'triggering' creditor: (1) an unsecured creditor, (2) who holds an allowable unsecured claim under section 502, and (3) who could avoid the transfers at issue under applicable (i.e., state) law." MC Asset Recovery, LLC v. Southern Co., 1:06-CV-0417-BBM, 2006 WL 5112612, at *3 (N.D. Ga. Dec. 11, 2006).

The relevant state law that allows 11 U.S.C. § 544(b)(1) to operate is O.C.G.A. § 18-2-75(a), which provides:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation *without receiving a reasonably equivalent value in exchange for the transfer or obligation* and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

O.C.G.A. § 18-2-75(a) (emphasis added).

As in its argument for dismissal of Count I, Defendant argues that Plaintiff has not sufficiently pleaded in Count II that Debtors did not receive reasonably equivalent value in exchange for their payments to Defendant to sustain a claim under § 544(b) and O.C.G.A. § 18-2-75(a). As no other issue has been raised by Defendant, the Court's analysis will again be limited to this issue.

As with his § 548(a)(1)(B) claim, Plaintiff has specifically pleaded that because Debtors paid $8,367.06 to Defendant and Defendant then paid only $340.15 to Debtors' creditors and settled none of Debtors' debts, Debtors did not receive reasonably equivalent value for their payments to Defendant. (A.P. ECF No. 1 at ¶ 22.) For the same reasons previously discussed, <u>supra</u> at Part II, this is a sufficient allegation of lack of reasonably equivalent value and amounts to "more than a bare assertion." <u>Fundamental Long Term Care</u>, 873 F.3d at 1344.

### IV.   **Plaintiff has sufficiently pleaded a claim for transfer avoidance under 11 U.S.C. § 550(a).**

Section 550(a)(1) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--

> (1) the initial transferee of such transfer or the entity for whose benefit
> such transfer was made[.]

11 U.S.C. § 550(a)(1). Therefore, an element of § 550(a)(1) claim is a successful avoidance or claim for avoidance under 11 U.S.C. §§ 544, 545, 547, 548, 549, 553(b), or 724(a). See, e.g., Andrews v. Graham Golding Co., Inc. (In re Graham Gulf, Inc.), Case No. 15-3065, Adv. No. 17-00082, 2018 WL 10345330, at *2 (Bankr. S.D. Ala. Feb. 14, 2018) ("To succeed on her § 550 claim, the trustee must state a claim for relief under §§ 544, 547, or 548 (or other sections of the Code not pled here)."); MC Asset Recovery, LLC v. Southern Co., 1:06-CV-0417-BBM, 2006 WL 5112612, at *4 (N.D. Ga. Dec. 11, 2006) (observing that if the plaintiff could not avoid a property transfer, it "would likewise be unable to recover" under § 550(a)).

Defendant posits that Plaintiff's claim under 11 U.S.C. § 550(a) should be dismissed because it is a "secondary cause of action" and survives only "when coupled with the transfer avoidance sections of the Bankruptcy Code," such as those in Counts I and II. (A.P. ECF No. 13 at 7.) Accordingly, Defendant argues, because Counts I and II fail, Count III should also be dismissed.

Defendant is correct that Count III depends on a successful transfer avoidance claim. However, as discussed previously, the Court has found, see supra at Parts II and III, that Plaintiff has sufficiently pleaded claims for constructive fraudulent transfer avoidance

AO 72A
(Rev. 8/82)

under 11 U.S.C. § 548(a)(1)(B) in Count I and transfer avoidance under 11 U.S.C. § 544(b)(1) and O.C.G.A. § 18-2-75(a) in Count II. Accordingly, the Court finds that Count III also survives dismissal. Defendant presents no other grounds for dismissal of Count III. The Court now turns to Plaintiff's state law claims.

### V.   Plaintiff's Georgia Debt Adjustment Act claim survives dismissal.

The GDAA limits the fees that may be charged for debt adjustment services in Georgia:

> In the course of engaging in debt adjusting, it shall be unlawful for any person to accept from a debtor who resides in this state, either directly or indirectly, any charge, fee, contribution, or combination thereof in an amount in excess of 7.5 percent of the amount paid monthly by such debtor to such person for distribution to creditors of such debtor[.]

O.C.G.A. § 18-5-2.

Georgia's statute defines "debt adjusting" as

doing business in debt adjustments, budget counseling, debt management, or debt pooling service or holding oneself out, by words of similar import, as providing services to debtors in the management of their debts and contracting with a debtor for a fee to:

> (A) Effect the adjustment, compromise, or discharge of any account, note, or other indebtedness of the debtor; or
> (B) Receive from the debtor and disburse to his or her creditors any money or other thing of value.

O.C.G.A. § 18-5-1(1).

AO 72A
(Rev. 8/82)

The statutes also provides that debt adjusters must disburse all funds received from a debtor, less authorized fees, within 30 days. O.C.G.A. § 18-5-3.2(a). The GDAA exempts from its application "those situations involving debt adjusting incurred in the practice of law in this state." O.C.G.A. § 18-5-3.

Plaintiff alleges in Count IV that Defendant has violated the GDAA by charging Debtors a fee of 21% of the debt enrolled in the Agreement as a "Service Cost," exceeding the 7.5% limit under the GDAA. (A.P. ECF No. 1 at ¶ 42.) Ultimately, Plaintiff alleges, Defendant charged Debtors fees totaling 90.4% of the non-refunded payments Debtors made to Defendant. (Id. at ¶ 43.) Plaintiff further alleges Defendant violated the GDAA by routinely failing to make disbursements to creditors within 30 days of receipt of fees from Debtors, specifically pleading that Defendant collected $4,620.31 from Debtors prior to disbursing any funds to creditors. (Id. at ¶ 46; see also id. at 11-12.) Plaintiff alleges that the debt adjusting Defendant provided to Debtors "was not incurred in the practice of law in Georgia, but was affirmatively offered by Defendant as a service" and that Defendant offered no legal services to Debtors. (Id. at ¶ 40.)

Defendant argues Count IV should be dismissed because Defendant, solely by virtue of being a law firm, is exempt from the GDAA under O.C.G.A. § 18-5-3. It also argues it is exempt from the GDAA because, as a law firm, it provided legal services to Debtors. Defendant contends that "debt negotiation and settlement falls squarely within

Georgia's definition of the practice of law." (A.P. ECF No. 13 at 10.) Alternatively, Defendant asserts that Count IV should be dismissed because application of the GDAA to Defendant would violate separation of powers principles by regulating the practice of law.

Defendant's assertion that it is exempt from the GDAA pursuant to O.C.G.A. § 18-5-3 is an affirmative defense. Burchett v. State, 283 Ga. App. 271, 273 (2007) ("Where certain conduct is generally prohibited, but where a statutory exception permits the conduct under specified circumstances, the exception amounts to an affirmative defense."). "A plaintiff is not required to negate an affirmative defense in its complaint. Thus, generally, the existence of an affirmative defense will not support a motion to dismiss." Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP, 609 F. App'x 972, 976 (11th Cir. 2015) (citations and quotations omitted). "A complaint may be dismissed, however, when the existence of an affirmative defense clearly appears on the face of the complaint." Id. (quotations omitted); see also Major League Baseball v. Crist, 331 F.3d 1177, 1183 (11th Cir. 2003) (in federal antitrust case against MLB, stating "[w]hen the applicability of baseball's exemption is so apparent, no factual development is necessary").

Accordingly, Plaintiff is not required to plead facts rebutting or disproving the applicability of the exemption of O.C.G.A. § 18-5-3. It is not apparent from the face of the

Complaint or Agreement that O.C.G.A. § 18-5-3 applies to this case.[6] Furthermore, "law firm" is not defined in the GDAA and Defendant does not propose a definition. Nevertheless, it appears from the face of the Complaint that Defendant at least styles itself as a "law firm" and, from the Agreement, offered legal services to Debtors.[7] Without attempting to define "law firm," the Court will address Defendant's argument and determine whether the GDAA provides for a blanket exception for law firms. This is an issue of apparent first impression in the Georgia courts.

     i.    **The GDAA exemption statute does not create a blanket exemption for law firms.**

When a federal court interprets a state statute, it must follow the state's rules of statutory interpretation. <u>Pingora Loan Servicing, LLC v. Scarver (In re Lindstrom)</u>, 30 F.4th 1086, 1091 (11th Cir. 2022). In Georgia,

---

[6] Even though he was not required to, Plaintiff did plead that Defendant is not exempt from the GDAA because "the debt adjusting provided by Defendant was not incurred in the practice of law in Georgia, but was affirmatively offered by Defendant as a service" and that Defendant offered no legal services to Debtors. (A.P. ECF No. 1 at ¶ 40.) The Court does not base its decision today on these allegations. The first allegation is a legal conclusion and not accepted as true. The Court also will not accept as true Plaintiff's allegation that Defendant offered no legal services to Debtors. It is belied by the face of the Agreement, which lists legal services at least *offered by* Defendant to Debtors. (A.P. ECF No. 13-2 at 4-6); <u>Griffin Industries, Inc. v. Irvin</u>, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). However, even not accepting these allegations at true, the Motion will be denied for other reasons herein discussed.

[7] The Court stops short of concluding that Defendant *provided* legal services to Debtors. Although the Agreement certainly contemplates the provision of legal services, it is not clear at this point what services were *actually provided* to Debtors and the Complaint does not plead facts that show that legal services were provided.

> [a] statute draws its meaning from its text. When we read the statutory text, we must presume that the General Assembly meant what it said and said what it meant, and so, we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. The common and customary usages of the words are important, but so is their context. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background of the statutory provision in question.

City of Marietta v. Summerour, 302 Ga. 645, 649 (2017) (internal quotations and citations omitted). "In ascertaining the ordinary meaning of a word that is not defined in a statute, it is often helpful to consult dictionaries that were in use when the statutes were enacted," although "they cannot be the definitive source of ordinary meaning in questions of textual interpretation because they are acontextual, and context is a critical determinant of meaning." McBrayer v. Scarbrough, 317 Ga. 387, 394 (2023) (internal quotations omitted). At this juncture, dictionary definitions still provide a useful starting point.

The relevant part of the GDAA exemption statute is only one sentence. It provides: "Nothing in this chapter shall apply to those situations involving debt adjusting incurred in the practice of law in this state." O.C.G.A. § 18-5-3.

The plain language of O.C.G.A. § 18-5-3 does not provide a blanket exemption for law firms, attorneys, or any category of persons or entities. Instead, the statute exempts "situations," indicating the applicability of the exemption is based on *circumstances*, not *categories* of persons or entities. Situation, BLACK'S LAW DICTIONARY (10th ed. 2014)

(defining "situation" as "condition; position in reference to circumstances"); Situation, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003) (defining "situation" as "position with respect to conditions and circumstances" or "relative position or combination of circumstances at a certain moment").[8]

Exempt situations are only those in which the debt adjusting was *incurred* in the practice of law in Georgia. "Incur" means "to suffer or bring on oneself (a liability or expense)." Incur, BLACK'S LAW DICTIONARY (10th ed. 2014); see also Incur, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003) (defining "incur" as "to become liable or subject to" or "to bring down upon oneself"). Accordingly, the circumstances that are exempt from the GDAA are those where (1) a person or entity suffered or brought upon itself the liability or expense of debt adjusting (2) while engaged in the practice of law in Georgia. In this context, "liability or expense" may be better understood as a "responsibility." In other words, a person or entity is exempt from the GDAA in those circumstances where the debt adjusting obligation arises in the practice of law in Georgia.[9]

---

[8] The current version of O.C.G.A. § 18-5-3 went into effect on July 1, 2015, so the Court considers the dictionaries in publication at that time.

[9] The parties hotly dispute what is required to incur debt adjusting in the practice of law in Georgia. The Court declines to fully explore this issue at this stage of the proceedings as it is more so an issue for summary judgment or trial after the record is fully developed and the Court can determine whether and to what extent Defendant engaged in the practice of law at all in connection with its relationship with Debtors. Defendant's status as a law firm, without more, does not necessarily mean that it engaged in the practice of law in providing debt adjustment services to Debtors. At this time, the Court need only determine whether Defendant is categorically exempt from the GDAA.

Accordingly, the Court finds that O.C.G.A. § 18-5-3 does not provide for a categorical exemption for law firms. Defendant's reading of the law wildly broadens the text, inventing an exemption for law firms—regardless of whether they are engaged in the practice of law in Georgia and have incurred debt adjusting in such practice—that is not supported by the statute. If the legislature wished to create a blanket exemption for law firms, it could have drafted the statute differently to make that clear.

     ii.    **It is not apparent from the face of the Complaint and Agreement that the GDAA exemption statute applies to Defendant.**

Next, Defendant urges the Court to conclude that Defendant provided debt negotiation and settlement services to Debtors and such services were incurred in the practice of law in Georgia because Defendant is a law firm with attorneys on staff, as shown by the Agreement and the Complaint. This argument relies on factual assumptions about the nature and extent of the services Defendant provided to Debtors. While the practice of law in Georgia is defined broadly and can include debt adjusting under certain circumstances,[10] see O.C.G.A. § 15-19-50, the Court simply cannot conclude that Defendant

---

[10] Defendant cites to two decisions by the Georgia Supreme Court to posit that "an attorney and law firm assisting another person to negotiate and compromise their debts is the practice of law. . . [and] Georgia courts have routinely found that non-lawyers who engage in debt settlement are engaged in the unauthorized practice of law." (A.P. ECF No. 13 at 10.) As a preliminary point, Plaintiff makes no allegation that an attorney or person supervised by an attorney negotiated or compromised Debtors' debts in a manner that constitutes the practice of law in the Complaint. To the extent the Agreement contemplates this, it provides only that Defendant *will perform* debt analysis, negotiate and resolve client debt, and perform litigation defense, subject to conditions and limitations, with a staff of attorneys and support staff—the Court

incurred debt adjusting in the practice of law in Georgia based on the allegations contained in Complaint or the terms of the Agreement. Defendant's status as a law firm with attorneys on its staff does not necessarily mean that it incurred debt adjusting in the practice of law in its dealings with Debtors. At this early stage of the proceedings, although the Agreement refers to an "Attorney/Client relationship" and the "legal services" Defendant *will provide Debtors*, the details of the debt adjusting services Defendant *actually provided Debtors* and whether Georgia attorneys provided or supervised the provision of such services, so as to amount to the practice of law, are unknown.[11]

---

is unable to make any conclusions about the extent or nature of the services *actually performed*, besides that debt adjusting occurred.

Furthermore, the advisory opinions relied upon by Defendant are distinguishable from the case at hand. In In re UPL Advisory Opinion 2003-1, the Georgia Supreme Court concluded that non-lawyers who represent a debtor in negotiations with a creditor who has filed a lawsuit against the debtor "must exercise legal judgment to assess the validity and value of a creditor's claim, evaluate procedural and evidentiary issues which may affect the outcome of the litigation, and advise clients as to their legal rights and obligations with regard to the debt and reasonableness of a settlement offer," amounting to the unauthorized practice of law. In re UPL Advisory Opinion 2003-1, 280 Ga. 121, 122-23 (2005). In In re UPL Advisory Opinion 2002-1, it concluded that a non-attorney debt collector who files suit to collect a debt on another's behalf is engaged in the unauthorized practice of law. In re UPL Advisory Opinion 2002-1, 277 Ga. 521, 522 (2004).

These decisions do not lead the Court to conclude that Defendant, simply by virtue of being a law firm with attorneys on staff, performed debt adjusting incurred in the practice of law in Georgia in its relationship with Debtors. Specifically, these decisions do not stand for the position that all debt adjusting by an attorney or supervised by an attorney in Georgia is *per se* the practice of law in Georgia and certainly do not indicate that non-lawyers may never engage in debt settlement. If this was the case and the Court followed the Defendant's reasoning, only attorneys would be permitted to provide debt adjusting services and the exemption statute would be at risk of swallowing the GDAA entirely.

[11] Although an apparent attorney, Atiya Vereen, electronically signed a copy of the Agreement (separate from the copy Debtors signed), the Agreement provides that the attorney would later have an "Initial Consultation Call" with Debtors. (A.P. ECF No. 13-3 at 42-43.) There is no indication that Mr. Vereen personally met with Debtors when the Agreement was signed, and even if she did, no reason to conclude at this time that she engaged in the practice of law or adjusted any debt in the practice of law in such a meeting.

Further factual development is required to determine the extent and nature of the services Defendant provided to Debtors. Cf. Brown v. Consumer Law Associates, LLC, 283 F.R.D. 602, 609-610 (E.D. Wash. 2012) (denying summary judgment where dispositive inquiry for applicability of attorney exemption under Washington's Debt Adjusting Act was whether defendant's attorneys were primarily engaged in debt adjusting or another type of legal practice and a factual dispute remained on this issue); Parks v. Persels & Associates, LLC (In re Kinderknecht), 470 B.R. 149, 167-68 (Bankr. D. Kan. 2012) (finding whether Kansas lawyer providing debt adjusting services "[was] 'practicing law' . . . [to be] questionable" and that "enough dispute remain[ed] in the record" as to whether lawyer was exempt from liability under the Kansas Credit Services Organization Act to deny summary judgment). In other words, the existence of the affirmative defense of O.C.G.A. § 18-5-3 does not "clearly appear[] on the face of the" Complaint and Agreement so as to support a motion to dismiss. Twin City Fire Ins. Co., 609 F. App'x at 976. Count IV survives the Motion.

---

Instead, a "representative" of Defendant identified as Sarah Durham, along with Debtors, signed a "Face-to-Face Presentation Acknowledgment" as part of the copy of the Agreement Debtors signed separately from Ms. Vereen. (A.P. ECF No. 13-2 at 34.) Confined to the allegations in the Complaint and the Agreement, the Court cannot conclude that Defendant's relationship with Debtors was a "situation[] involving debt adjusting incurred in the practice of law in this state." O.C.G.A. § 18-5-3.

### iii.   Applying the GDAA to a law firm does not impermissibly regulate the practice of law.

Defendant's separation of powers argument also fails to result in dismissal of Count IV. Defendant relies heavily on the Georgia Supreme Court's decision in <u>State ex rel. Doyle v. Frederick J. Hanna & Associates, P.C.</u>, 287 Ga. 289 (2010) to argue that application of the GDAA to Defendant, a law firm, impermissibly regulates the practice of law and runs afoul of separation of powers principles under the Georgia Constitution. The Georgia Constitution provides that "[t]he legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided." GA. CONST., art. I, § II, ¶ III.

In <u>Doyle</u>, the state administrator of the Georgia Fair Business Practices Act of 1975 ("GFBPA") issued an investigative demand to a law firm after receiving complaints alleging abusive debt collection practices in its operations. The law firm represented creditors in collecting debts owe to such creditors. After the law firm refused to comply with the demand, the administrator filed an application in state trial court to compel the law firm's compliance. The trial court denied the application, concluding that the law firm's "day-to-day operation directly involve[d] the practice of law, and because the investigative demand directly impacts [the law firm's] practice of law, that demand is an

attempt by [the administrator] to regulate the practice of law" in violation of the separation of powers doctrine. Id. at 290.

The Georgia Supreme Court affirmed, holding that the "noncommercial aspects of lawyering" should be excluded from the GFBPA "for public policy reasons." Id. at 291. It further held that "the representation of clients by a law firm does not come within the [G]FBPA even if certain services were provided by non-lawyers within the firm and could have been offered by a company without any attorneys," because the law firm was providing "a professional legal service" and engaging in the practice of law in collecting debts that were owed to its clients. Id. at 293; see also id. at 291 (observing that there is "little dispute among the decisions addressing this issue that consumer protection statutes do not apply to claims arising out of the actual practice of law," even though the GFBPA does not contain any language expressly excluding or including the legal profession within its ambit) (internal quotations and citation omitted). However, the Court did not hold that the legislature could not regulate certain conduct of attorneys and expressly declined to reach whether the application of the GFBPA to the practice of law would violate the separation of powers doctrine. Id. Instead, the Doyle decision is based largely on public policy considerations and the trial court's finding that the law firm was engaged in the practice of law by representing its clients in the collection of debts.

Defendant's reliance on Doyle is distinguishable from the present case and unpersuasive. Doyle involved an investigative demand by a state executive agency into a law firm's practice and operations and, significantly, relied on the trial court's finding that the law firm was providing "a professional legal service" and engaged in the practice of law. Here, there is no such investigative demand into Defendant's operations. Instead, this adversary proceeding is cabined to Debtors' relationship with Defendant. Moreover, no finding has been made that Defendant provided Debtors a professional legal service or engaged in the practice of law vis-à-vis Debtors. Doyle's application therefore is limited, at least at the motion to dismiss stage.

It is true that the Georgia Supreme Court has the inherent authority to regulate the practice of law in Georgia. GRECAA, Inc. v. Omni Title Services, 277 Ga. 312, 312 (2003) ("[N]o statute is controlling as to the civil regulation of the practice of law in this state. Only this Court has the inherent power to govern the practice of law in Georgia."). However, the legislature may and does pass laws that apply generally to all, including law firms and attorneys, and to the entrepreneurial aspects of the practice of law. A separation of powers issue arises only if the law impermissibly regulates the practice of law. See, e.g., Persels & Associates, LLC v. Banking Comm'r, 318 Conn. 652, 679 (2015) (observing, in the context of a Connecticut law similar to the GDAA, that "[i]f the commissioner were to determine, however, that, in a particular case, the [law firm] or another debt negotiation

company was merely using Connecticut attorneys as a front or facade to circumvent the debt negotiation statutes, then there would be no separation of powers problem and the commissioner would not be barred from exercising his full statutory authority").

The Court concludes that allowing Plaintiff's GDAA claim to proceed against a law firm does not present a separation of powers issue because doing so does not necessarily regulate the practice of law in Georgia. The exemption statute specifically excludes from its reach "those situations involving debt adjusting incurred in the practice of law in this state." O.C.G.A. § 18-5-3. As previously established, this does not constitute a blanket exemption for law firms. Defendant apparently conflates simply being a law firm with the practice of law and believes regulation of a law firm—regardless of the services the law firm provides or does not provide to a certain client—is equivalent to the regulation of the practice of law. The Court has found no support for such a conclusion. Again, here and unlike in Doyle, there has been no finding that Defendant was engaged in the practice of law in its provision of services to Debtors. If such a finding is made at a later time, it may be that the exemption of O.C.G.A. § 18-5-3 will apply to Defendant. However, it would be premature for the Court to make such a determination while deciding a motion to dismiss.

VI. **Plaintiff has sufficiently pleaded claims for violation of the Georgia Fair Businesses Practices Act and the Georgia Unfair and Deceptive Practices Toward the Elderly Act.**

Finally, Plaintiff alleges in Count V that Defendant violated the GFBPA because violations of the GDAA are *per se* violations of the GFBPA. (A.P. ECF No. 1 at ¶ 51.) Therefore, Plaintiff alleges Defendant is liable for actual damages of $13,367.06 under O.C.G.A. § 10-1-399(a); treble damages under O.C.G.A. § 10-1-399(c); and reasonable attorney's fees and expenses of litigation incurred in connection with this proceeding under O.C.G.A. § 10-1-399(d). (Id. at ¶¶ 54-56.)

Plaintiff also alleges in Count V that because Debtor Walter Ernest Mai was 60 years old when he executed the Agreement and considered an "elder person" under O.C.G.A. § 10-1-850(2), Defendant violated the Georgia Unfair and Deceptive Practices Toward the Elderly Act ("GUDPTEA") and is liable for an enhanced civil fine in the amount of $10,000 under O.C.G.A. § 10-1-851. (Id. at ¶ 57.) Plaintiff also seeks an award of punitive damages authorized under O.C.G.A. § 10-1-853 based on Mr. Mai's status as an elder person. (Id. at ¶ 58.) Plaintiff specifically alleges that, based upon information and belief, Defendant's attorneys knew Debtors would be better served by filing for bankruptcy, but nonetheless encouraged them to enter into the Agreement that served no purpose other than to generate fees for Defendant and that Defendant has made violation of the GDAA its primary business model and has been credibly accused of prior GDAA violations; based

on these allegations, Plaintiff alleges Defendant's actions "constitute willful misconduct and exhibit an entire want of care that demonstrates a conscious indifference to the consequences suffered by the Debtors" and warrant an award of punitive damages in the amount of $40,000. (Id. at ¶¶ 58-61.)

Defendant argues Count V should be dismissed for several reasons. First, it is derivative of Count IV, so since Defendant argues Count IV fails, so should Count V. Defendant also urges the Court not to accept Plaintiff's allegations against Defendant "based upon information and belief" and find such allegations insufficiently pleaded. Second, Defendant asserts that the GFBPA does not apply to it as a law firm, because regulating it would regulate the practice of law, and the GFBPA regulates only areas of activity that are not separately regulated, unlike the law. In support, Defendant relies again on Doyle, which held that the GFBPA does not apply to law firms providing "a professional legal service" and engaging in the practice of law in collecting debts that were owed to its clients. Doyle, 287 Ga. at 293.

The Court finds that Plaintiff has sufficiently pleaded claims under the GFBPA and the GUDPTEA. First, Plaintiff's claim under the GFBPA depends on the success of Plaintiff's GDAA claim. Because Plaintiff's GDAA claim survives Defendant's motion to dismiss, see supra at Part V, so will his GFBPA claim.

Second, as above, Plaintiff's GUDPTEA claim under O.C.G.A. § 10-1-851 is derivative of Plaintiff's GFBPA claim. See O.C.G.A. § 10-1-851 (providing for liability if GFBPA violations involve elderly or disabled individuals); see also Brown v. MedScope America Corp., 4:21-CV-71 (CDL), 2023 WL 5596250, at *5 (M.D. Ga. Aug. 23, 2023) (Because Plaintiff's [GFBPA] claim survives, Plaintiff's claim under the [GUDPTEA] must also survive."). Plaintiff has specifically pleaded that Mr. Mai was an elder person—60 years of age or older, as defined by O.C.G.A. § 10-1-850(2)—when he contracted with Defendant and the factual allegations in the Complaint occurred. Plaintiff has also stated a claim for punitive damages under the GUDPTEA based on Defendant's alleged violation of the GFBPA. O.C.G.A. § 10-1-853 ("An elder or disabled person who suffers damage or injury as a result of an offense or violation described in this article has a cause of action to recover actual damages, punitive damages, if appropriate, and reasonable attorney's fees."); Brown v. Arturo Equity Partners, LLC, 2022 WL 3211437, at *3 (N.D. Ga. June 28, 2022) ("By virtue of demonstrating violations of the GFBPA, Plaintiff has a cause of action under [O.C.G.A. §§ 10-1-851, 10-1-853]."), Report and Recommendation adopted (N.D. Ga. Nov. 1, 2022); Lloyd v. Specialty Care of Marietta, No. 1:09-CV-1302-ECS, 2009 WL 10699020, at *2 (N.D. Ga. Sept. 9, 2009) ("Plaintiff's ability to maintain a [UDPTEA] action through the GFBPA should be determined solely on the existence of an alleged violation,

without regard to the specific elements required for recovery under a GFBPA private cause of action.").

Related to Defendant's claim for punitive damages under the GUDPTEA, the Court accepts as true Plaintiff's allegation based on information and belief that Defendant's attorneys knew Debtors would be better served by filing for bankruptcy but nonetheless encouraged them to enter into the Agreement that served no purpose other than to generate fees for Defendant. (A.P. ECF No. 1 at ¶ 59.)[12] This allegation is bolstered by other factual allegations in the Complaint, specifically, Debtors' insolvency or near-insolvency when they contracted with Defendant; Defendant's meager payments to Debtors' creditors while collecting large amounts of fees; and Defendant's failure to settle any of Debtors' debts while collecting large amounts of fees. (Id. at ¶¶ 22-23, 30-31.) Sosa v. Martin Cty., Fla., No. 20-12781, 2023 WL 1776253, at *9 (11th Cir. Feb. 6, 2023) ("[F]acts based upon information and belief may support a claim when facts are not within the knowledge of the plaintiff but he has sufficient data to justify an allegation on the matter.") (quotations omitted) (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1224 (3d ed. 2012)).

---

[12] The Court will not accept as true Plaintiff's allegation that Defendant has been credibly accused of prior GDAA violations and has made violation of the GDAA its primary business model. (A.P. ECF No. 1 at ¶ 60.) There is nothing in the Complaint or Agreement on which Plaintiff appears to base this allegation. However, even not accepting these allegations as true, Plaintiff has sufficiently pleaded his GUDPTEA claim.

Finally, Defendant's argument that the GFBPA does not apply to Defendant because it is a law firm and applying the GFBPA to it would regulate its law practice fails. As discussed <u>supra</u> at Part V(iii), <u>Doyle</u> is not persuasive on this issue. <u>Doyle</u> does not create a blanket exemption from the GFBPA for law firms, as Defendant urges. In <u>Doyle</u>, the Georgia Supreme Court relied on the trial court's finding that the law firm was engaged in the practice of law. <u>Doyle</u>, 287 Ga. at 293. Here, the Court can make no such determination. Furthermore, that case was decided in the context of a state executive agency's attempt to investigate the debt collection practices undertaken by a law firm on behalf of creditor clients. The Complaint and Agreement do not demonstrate facts showing and the Court cannot conclude at the motion to dismiss stage that Defendant was engaged in the practice of law in Georgia in its relationship with Debtors. Furthermore, the GFBPA may still be applicable to Defendant insofar as it applies to Defendant's actions that do not constitute the practice of law. Accordingly, for the reasons stated above, Plaintiff has sufficiently pleaded claims for violation of the GFBPA and the GUDPTEA.

## VII.    Conclusion

Based on the foregoing, the Court finds that Plaintiff has sufficiently pleaded facts to state each of his claims in the Complaint and survive Defendant's Motion. Specifically, as to Counts I-III, Plaintiff has pleaded that Debtors did not receive reasonably equivalent value in exchange for the payments they made to Defendant. Defendant's grounds for

dismissal of Counts IV and V turn on the nature and extent of the services Defendant provided to Debtors. Because these rely on facts not yet in the record, the Motion will be denied. Accordingly, and for the reasons stated above,

<u>ORDER</u>

**IT IS HEREBY ORDERED** that Defendant's Motion (A.P. ECF No. 13) is **DENIED**.


Michele J. Kim
Chief United States Bankruptcy Judge
Southern District of Georgia

Dated at Brunswick, Georgia,
this 30th day of September, 2025.